This is 17-3157, United States v. Russian. May it please the Court, my name is Howard Pincus from the Federal Public Defender and I represent James Russian. Please proceed. Thank you. Mr. Russian told the District Court that his attorney had lied to him and had misrepresented his position to the District Court and that her lack of candor had led to a complete breakdown in communication. By instead treating Mr. Russian's complaint as just a disagreement over tactics, the District Court abused its discretion. This Court should remand for the District Court to consider Mr. Russian's complaint on its own terms and, if it determines that substitution of counsel should have been granted, to hold a new sentencing hearing unless the government proves that the error was harmless beyond a reasonable doubt. In a pro se letter on June 20th, Mr. Russian stated that his attorney was a liar and he had fired her. He did not, in that letter or in the document that accompanied it, ever say that he wanted to represent himself. Instead, he explained that counsel had promised to raise a fred issue on appeal and had not done so and that when he asked her about this later, recently, she had lied to him again. Ten days later, on June 30th, counsel filed a motion of her own saying that Mr. Russian wanted to proceed pro se. The motion said that he had sought the right of self-representation in his June 20th pro se letter. Within days, on July 4th, Mr. Russian put in the legal mail system of his facility a pleading that disputed that. He stated that he had never asked counsel, he had never asked the court to represent himself, that because counsel had represented otherwise, he had lost faith in her and that he was requesting new counsel because there was now a debilitating breakdown in communication. And the transcript suggests that the court did receive that when it spoke at, what was it, July 7th? The court did receive it. Okay, so the court has that. Correct. The court has the statement about my lawyer's a liar on June 20th. Correct. It has the same statement reflected in his letter that he mailed on July 4th. So the court knows about the problem of trust. The court knows about the debilitating breakdown in communication that is alleged. And then the court goes forward and appoints and says that she needs to continue to represent him. In other words, denies the motion of substitute. It's not clear to me at all where this confusion comes in. I mean, why couldn't it be, based on this record, that the court understood what the teed-up issue was and when it voted to deny the motion of substitute, what you're alleging to be the concern, the kernel of the breakdown in communication is the lack of trust. Correct. The court understood that. It understood clearly that he believed he didn't trust her and then it denied the motion. So why isn't it that the court implicitly said no breakdown in communication? Well, because, well, first of all, well, what the court said at the July 7th hearing was, this is a disagreement about tactics. Oh, I am. That's not. Is that? What page of the transcript is that in? I believe that's pages 8 to 9 of the transcript. Let's see. I don't recall the word tactics being used. I don't want to eat your time, Mr. Pincus. If you can't find it, just. I'm certain that the court was talking about this being a disagreement about tactics and that is a very different complaint than the one that Mr. Russian actually raised. His concern was that he wasn't communicating with counsel. And what the court said is, you know, Ms. Brannon is a good attorney. I have confidence in her. That's not responsive to whether she's communicating with Mr. Russian. And that's the crux of the complaint. That's right. And that issue was teed up. And on page 5, I think it is, it says, with respect to your position on counsel, I understand that you are dissatisfied with Ms. Brannon. And then it goes on to say, because she's not following your instructions. Correct. Well, that doesn't. You construe that to be that there's a, that he understood that there was a miscommunication on the tactics. That doesn't necessarily have to be the case. Doesn't follow my instructions. That goes back to the fact that she didn't file, pursue the Ferret appeal when he asked her to do so. I don't trust her. That's not what he said about the appeal. He said she agreed to, that we were going to raise this, and then she didn't. She didn't. She lied. She lied to me. She lied to me. That's right. So she didn't follow his instructions, right? Well, it wasn't, what he's saying is that we agreed to raise this, and then she didn't. That is what he said is a lack of candor. How is that different from she didn't follow my instructions? I told her to file the appeal, and she didn't put the issue in there. We agreed to raise this, and that shows that she says, yes, I'll raise this. But then she doesn't. What's our standard of review, Mr. Pincus? Abuse of discretion, Your Honor. Okay. And under that, underlying that are clear error of determinations of fact, right? We're clearly erroneous as our determination as it relates to factual issues. Correct. And our point is that the district court treated the issue here as something that it wasn't. The issue was a lack of candor. And remember, Mr. Russian supplements that on when he actually, I mean, at first he says, I fired counsel. He never said he wanted to represent himself in that June 20th letter. In his July 4th letter, he says, I want to replace her because she misrepresented my position to the court. I never asked to represent myself, and she said that that's what I asked for. And that's a lack of trust. It's the same issue that he flagged for the court in his June 20th letter, but that the court converted into a not following his instructions or wishes. The reason I ask you the question about the standard of review is, if this comes down to a question of what finding does the record support in terms of what is at play here, why wouldn't the clearly erroneous standard of review say that if there was some evidence in the record that would support the view that the court understood what was at play here, the lack of trust, and just said, they heard from Ms. Brannon who said there was no breakdown of communication. So there actually were two different views being expressed here. There is no breakdown of communication. She says, he says there is, and the court denies the motion. And why couldn't that be viewed as an implicit resolution of a factual issue? Well, first of all, she says, I'm aware in her June 30th plea, I'm aware of no breakdown of communication other than what was expressed by Mr. Russian. So that's not a denial that there's a lack of communication. And that's before she, and in that motion is when she said to the court, he said he wanted to go pro se. And then Mr. Russian, a few days later, once he gets that, the counsel's motion says, she misrepresented my position. I have no faith in her anymore. There's a debilitating breakdown of communication. If an attorney lies to a client, that's a very separate issue than whether they're disagreeing on tactics. Yes, but that's predicated on two sentences of the transcript, which if I could plausibly read it another way, why wouldn't I be able to rule that it would not be clearly erroneous for the district court to also read it that way? In other words, the district court, when it made the statement that, yes, he's not following your instructions, why couldn't that equal he's saying he can't trust you to do what you tell him to do? Because he never said she's not following my instructions. That's what the court, again, Mr. Pink, it seems to me this is semantics. If he says, if he says, we agreed to file this appeal raising a FARETA issue, and then she didn't do it, why isn't that his instructions to her to file a FARETA issue, and she doesn't do it? If he said, I asked her to file a FARETA issue, and she didn't, that's one thing. He said, we agreed to, and she didn't. And she said she, what he's effectively saying is she said she would raise that issue, and then she didn't. That's a lack of trust issue. And then there's a misrepresentation to the court. Nowhere in that June 20th letter did Mr. Rushin say he wanted to represent himself, and that's what counsel told the court. And he said, I can't trust her. She lied to me, and she misrepresents my position to the court. And the court says, well, you're just, she won't follow your instructions. And it's probably because she, the court had been dealing with him as a sovereign citizen, and may have thought that this was what was going on. But the court has to rule on the motion in the terms in which it's framed. Mr. Rushin was saying, she's lying to me, there's a lack of candor, I can't trust her, there's a complete breakdown in communication. Disagreement about tactics is not a complete breakdown in communication. Looking at that sentence, it said, doesn't use the word tactics. That's your word. Okay. And so the question is, if I can plausibly read the transcript to say that that's not what it's saying at all, that what it's saying is, he doesn't trust you and you don't follow my instructions, then when I look back at the March, the June 30th pleading that was filed by counsel, what she says is, there's no breakdown in communications other than the fact that he doesn't trust me. So the issue was, I mean, the issue's been out there. It's not like the court wasn't aware of his claim that she didn't, that he couldn't trust his lawyer and then ruled to deny the motion a substitute. If we're looking at what was out there, the court in its July 5th order that was issued before it received Mr. Rushin's July 4th letter, said he wants to represent himself and denies it on that basis. But that's understandable, isn't it? You say this June 20th letter is evident that he was not seeking to self-represent, but those are the words that are in capital letters in this letter. And it may be that he's referring back to he wanted to appeal the FERPA issue. They had agreed that that would happen. It didn't happen. But still, to just a person who's reading this handwritten letter, self-representation is what jumps out of it. He had a history of asking for that. I think it's pretty hard on the district court to expect the district court to understand this June 20th letter to be something other than that. Well, he says, Mr. Rushin says at the outset of that letter, the complaint is that Ms. Brannon is a liar. That's what he says, I think, in the second sentence of that letter. And then he talks about her agreement to raise a FRED issue. And then he's referencing back that this was the issue, the right of self-representation. But he's not saying that he wants to represent himself. He's talking about what should have been raised, what she agreed to raise. And nowhere in there does he say, I want to represent myself at this hearing. And instead, the court takes it that way. So the court follows counsel's lead in the June 30th motion where she says, Mr. Rushin asked the court to represent himself. He never said that in his letter. Can you tell me how this supposed total breakdown in communication manifests itself? Because I see the attorney filing an objection to the PSRR on legal bases that I think that Mr. Rushin would agree with even now. What did he contend the failure of communication caused, or how was he hurt by it? Well, he didn't say what could have been raised or what the communication would have looked like. But this Court has recognized that communication between a lawyer and client is essential to effective representation. We don't know what that communication would have yielded. And if there's a complete breakdown in communication, it's not our burden to show what communication would have led to in terms of the hearing. It's the government's burden to prove that any error in denying substitution was harmless beyond a reasonable doubt. So to ask Mr. Rushin to say, and the record doesn't contain that, what the sentencing hearing would have looked like with a fully functioning relationship with counsel where there wasn't a lack of trust, where there wasn't a breakdown in communication is just not right. It's up to the government if there should have been substitution of counsel to prove that the denial was harmless beyond a reasonable doubt. So we would ask this Court to remand for the District Court to consider Mr. Rushin's complaint on its actual terms. And if it finds that there was a complete breakdown in communication and the counsel should have been substituted to hold a new sentencing hearing. This Court should also order that if there is no new sentencing hearing, the residential treatment provision should be stricken from the special condition as the government agrees and also that the condition on the advocacy be amended to conform with the sentences orally imposed. Thank you. Thank you, counsel. Good morning, Your Honors. James Brown for the United States. Your Honors, on issue one, the way counsel argues the point, he argues that we understand it to mean that the defendant's basic complaint about distrust itself is enough to warrant substitution of counsel. But just because a defendant distrusts his counsel, that does not mean that there's good cause for substitution. In order to show good cause for substitution, the defendant would have to show that there was a complete and total breakdown in communication. The defendant here repeatedly insists, my client did not trust his counsel. My client thought that his counsel was a liar. My client distrusted counsel. But that does not equal a complete and total breakdown in communication. That's a trust issue. That is not a communication issue. So we think that if you look at the defendant's own arguments and construe them even in the light most favorable to him, he still hasn't even satisfied any standard for showing good cause because distrust has nothing to do with communication. I think that's a stretch. Distrust has nothing to do with communication. If I don't trust you, why would I tell you my deepest, darkest secrets as my lawyer? Does that make sense to you? We're just saying that that does make sense. We're just saying that they're different issues. They're different issues. We can distrust each other but still speak with each other. They're just different issues. One definitely feeds into another and may affect another, but they're different issues. Well, if it may affect another, then the question becomes whether, in part, the district court inquired enough to find out whether it actually would affect it. Well, that's a valid point. We would counter that simple distrust does not equal a total and complete breakdown in communication. And here the defendant did not allege a total and complete breakdown in communication. He never did that. He alleged a debilitating breakdown of communication. That's what he alleged at the sentencing hearing. And debilitating won't get you there? It's got to be total and complete. Well, debilitating and feeble is not enough? I think that's the only way to read the court's precedence. The court has stated that it has to be complete and it has to be total, and anything less than that is not complete and total. We're just going by the dictionary. Debilitating means weakened, debilitated, but it's not complete and total. I mean, he's not made the allegation that there was a complete and total breakdown of communication. He is putting the word debilitating in there as if it were complete and total, but it's not. It just simply can't be. They don't mean the same thing. Just like distrust doesn't mean lack of communication. I want to, if I could, Mr. Brown, I want to understand, in the district court statement at the July 7th hearing, it speaks about the June 20th document. And in discussing the June 20th document, it says, among other things, you asked in that document for replacement of counsel. I didn't see that in the June 20th document. I think the court's correct. I did not see that in the June 20th document. The court may have been mistaken there. I think the court is correct that that's not in there. And, you know, and I'm not trying to make a hyper-technical point. I'm just trying to understand. I mean, depending on what the court's understanding is of what was going on, it may reflect what it ruled on. Because it later goes on to say that in some sense implicitly, when it got that document that was submitted on July 4th, that it in effect thought that it was urging the same thing that he addressed on June 20th. The court, I think the court's talked about both scenarios. The court said that I declined to reinstate your self-representation. That's on page 12 of Volume 3 by this court's pagination. It says, for the reasons uttered in my order a couple days ago, declined to reinstate your self-representation. So we could take that as the defendant. The court may have thought that. And then the court, the next sentence says that I'm not going to substitute either. The court says, quote, and given the late date of this issue and, frankly, given my familiarity with Ms. Brannon, who has a national reputation for her skill in representing criminal defendants, I decided that I would not replace her with someone else. So the court took it as both. If you – the court took it as sort of an alternative. I'm not going to reinstate the right of self-representation. I'm not going to substitute Ms. Brannon. And, again, that's on pages 11 and 12 of this court's pagination of Volume 12, Volume 3. So is the argument that you started out with, is it the notion that even if – given that the trust issue was fronted, that the court could not, as a matter of law, have erred in denying the motion to substitute because there was never an adequate showing of a total breakdown in communication? Correct. Is that the argument? That is our position. And he has the burden. This court says that the defendant has the burden to show a total and complete breakdown of communication. So it's right there in black and white. He never showed a total and complete breakdown of communication. He may have alleged a debilitating breakdown of communication. And the distrust, just mere – simply the fact that he distrusts her does not demonstrate a total and complete breakdown of communication. He's never – he's never met his burden. He never put on any evidence. Other than what he said. And? Well, that – but that argument really doesn't address the argument that Mr. Russian is making. I mean, in other words, he's saying that the court just never really understood that trust was that issue as it related to – as it related to the motion to substitute counsel to begin with. In other words, the court never understood that anyway. So it was when it ruled to deny the motion to substitute, it was doing so under essentially a false universe of facts. If you look at what the defendant said in his statement at July 7, 17, and the statement that he submitted to the court right before that, the written statement, he doesn't talk about – he doesn't talk about distrust. He talks about tactical decisions or strategic decisions that his counsel made with which he disagrees. First he says that counsel did not raise Feretta v. California on my appeal. Then he says she failed to raise Judge Milgren's taking away my right to self-representation without a plea colloquy. And then she – he does say that Bannon misrepresents the position of Feretta v. California hearing James D. Russian never asked the court for self-representation. So he does claim that she misrepresented one of his positions. He does not state the word distrust. And then he also points out – and I'm looking at volume 3, pages 10 and 11 of this court's pagination. He also points out on page 11, I asked her to correct one thing on the PSR, that I was not a U.S. citizen. She didn't do that. In all of this, the three assignments of tactical errors and the fact that she misrepresented something to the court, all of that he says is a total breakdown of communication. But he never says I don't trust her and she's a liar. He said that in the June 20th letter. And Ms. Evans acknowledged the fact that there was distrust. But that's not – those weren't the reasons. The distrust wasn't the main reason fronted at the sentencing hearing for getting new counsel. It was the tactical errors. That explains – Whoa, whoa, whoa. You're making Mr. Russian's argument for him. If you're saying that what was before – what was advanced at the July 7th hearing was tactical errors, then Mr. Russian's argument is yes, that's exactly what was fronted at July 7th. And the court understood that to be – misunderstood what he wanted. So I think – are you doing that? I mean, is that your position, that what he was doing was arguing what the court could readily understand him to be arguing was tactical errors? Because if that was the foundation for his decision, then that's a problem. Because according to Mr. Russian, that's not in fact what he was asking for at all. Well, Mr. Russian should have made that clear at the sentencing hearing. He didn't mention the word distrust. He didn't mention the word liar. It looks like – He mentioned the word liar? Not at the sentencing hearing. Okay. He mentioned that in a prior plea. And I hope my colleague corrects me if I'm wrong on that. But wouldn't it – but his point, I think, is it would be error if the court understood Mr. Russian to be arguing, give me a new lawyer because they aren't doing tactical errors, and then the court says, okay, that's not a valid foundation for a new lawyer denied. But if in fact Mr. Russian wasn't arguing that at all, in fact he was arguing, give me a new lawyer because I don't trust the lawyer I have. So if there is, Mr. Russian's position appears to be the court operated under a misunderstanding, and therefore that needs to be corrected. Well, that is his position. We think that position goes back to the June 20th letter that the court cited where Bennett says my counsel is a liar. He did not make those representations at the July 7th sentencing. So would it be reasonable for the court to have understood, based upon what transpired leading up to and on July 7th, that Mr. Russian was asking for a substitution of counsel based upon tactical errors? It would have been reasonable. It would not have been an abuse of discretion not to. Basically what the court did is the court took the defendant's words at his face value at the July 7th sentencing hearing instead of going back and saying, oh, but you said this, that before. You said that before. You said that before. The court just took his words at face value. He said he had three tactical errors and his counsel misrepresented something. Then he said there was a debilitating breakdown in communication. And then the judge said, I understand that you are dissatisfied that Ms. Brannon has not followed all of your instructions or requests with respect to both the processing of your appeal as well as the instant matters here. That was the court's assessment of the situation. I don't see how this argument helps you, Mr. Brown. And so I guess I must be missing something. How do you get to prevail out of this argument? Because the argument that Mr. Russian is making is that's the nub of the error, that the court understood him because he had made it clear in his July 4th pleading that the court said it read that he didn't trust the lawyer, and that's why he wanted a new lawyer. There wasn't a tactical issue, you know, a tactical decision issue going on there. That's what he said. And he said he didn't trust the lawyer at the hearing. So, I mean, it seems to me this argument is an argument that could have been well made, you know, 15 minutes ago. Well, we appreciate that. We're just going by what the court said. Basically, in Document 178 on July 6th, the defendant stated exactly what he said at the sentencing hearing on July 7th. And at those hearings, the only nugget where mistrust could be found, the only nugget is when he said that Ms. Brannon misrepresents the position at the Frederick, California hearing. James D. Rushin never asked the court for self-representation. I have no faith in the Federal public defender. But in order to get to that distrust, you have to go back. You have to go back to the June 20 letter. You have to go back to another document that was not before the court. Well, the court – I mean, the court – what do you mean not before the court? The court read the document. The court also reported to have the document that he filed on July 4th. So the court knew his complaint about trust, which he made clear is my recollection. I can go back and see. But it made clear in his July 4th letter, I don't trust her. She lies to me. So what do you mean he doesn't have that information? We don't think that the defendant actually made clear in the July 4th letter that he basically said exactly what he said at the July 6th hearing. And he said he's lost faith. And, you know, we agree that the court – the thing about the liar, that she's a liar and I don't trust her, that goes back to a June 20th letter. That goes back to document 171 filed on June 20th. That's where he calls her a liar. So we're moving on to July 7th. And he does not make – he's not calling her a liar on July 7th. He's saying she misrepresented something and that she made three tactical errors. And you're saying that the court should have ignored – ignored now, mind you, the document that was filed on June 20th in understanding what his position is, particularly since in the document that the court purported to have that was filed – that he submitted on July 7th, he explicitly says, I have no faith in the federal public defender and asked for a replacement counsel due to a debilitating breakdown in communication. That doesn't sound like tactical errors to me. Well, if you look at – if you look at the July 7th – July 7th hearing statement and if you look at the document filed before, there are three specific tactical errors cited. We don't think it was an abuse of discretion if the court did not consider the July 20th filing in reaching its decision. We don't think the court was required to go back to the July 20th filing. Excuse me. Thank you. We think that the court did not abuse discretion in not doing that. We think the court was allowed to take the statements the defendant made in the July 7th hearing and the July 6th document on their merits, and when the court did that, the court found that the defendant was complaining about instructional errors. In order to get to the – to the I don't trust counsel, you have to go back to the June 20th letter in order to say – How about I don't have faith in my federal public defender? That's based upon tactical errors? It may not be, but it's still not a total and complete breakdown of communication. It doesn't allege a total and complete breakdown of communication. It alleges – I mean, you can take any prosecution. At some point during that prosecution, any defendant is going to be dissatisfied with something his lawyer does. That just happens. Some people voice it more often than others, but it happens almost probably in every case. But that doesn't mean there's a total and complete breakdown of communication. The defendant has to show that, and there is no record to support a total and complete breakdown of communication. At most, the record shows that he did not trust his counsel and had no faith in her. And that's not a reason for substitution of counsel. Thank you, counsel. Your time expires. My time is up. Thank you. Mr. Pincus, you had a small vote. Just one quick factual point. In the June 20th letter, Mr. Russian said that – referring to Ms. Brannon – quote, she told me she was going to get me relief with the Feretta v. California case, and then later in that letter he said, I questioned Brannon as to why she didn't keep her word. So this was all about trust, and this is what he said in his July 4th motion. She misrepresented my position. Okay. All about trust. Well, the point that they lead off position, anyway, of government counsel was, not a sufficient showing was made of a total, underscored word, breakdown of communication. So even if there's these flitterings of, I don't trust her, I wish she would keep her word, that's not total breakdown. He doesn't even use that word. He says debilitating. To expect – to parse it that finely for a pro se defendant is just unfair. If there was any doubt about it, as the Court said before, the district court should have inquired. There certainly is an allegation of a lack of trust, a lack of candor, a misrepresentation, and a debilitating breakdown in communication. At the very least, the district court should have inquired. Thank you. Thank you, counsel. We understand your positions. Counsel, excused, and the case shall be submitted.